J. RAY ARNOLD LUMBER CORPORATION OF OLUSTEE, a corporation, *Plaintiff in Error*. vs. WILLARD RICHARDSON, a minor, by V. A. RICHARDSON, his next friend, *Defendant in Error*.

141 So. 133.
Division B.
Opinion filed April 19, 1932.
Petition for rehearing denied May 19, 1932.

J. B. Hodges, Walter A. Dopson, and McKay, Withers & Ramsey, for Plaintiff in Error;

W. B. Cone and Evan Evans, for Defendant in Error.

DAVIS, J.—In this case the plaintiff, a minor, recovered judgment in the Court below, in the sum of $10,000.00. Upon writ of error the defendant contends that no basis for legal recovery was shown by the pleadings and proofs, or that if so shown, that the judgment is grossly excessive.

The declaration was in one count and was predicated upon Section 5943 C. G. L., 4020 R. G. S., which reads as follows:

"No child under fourteen years of age shall be em-

ployed, permitted or suffered to work in, about or in connection with any (1) mill, (2) factory, (3) workshop, (4) mechanical establishment, (5) laundry, (6) or on the stage of any theatre.''

It alleges in substance that the defendant, J. Ray Arnold Lumber Corporation, was engaged in operating a lumber mill in Baker County; that the plaintiff, Willard Richardson, was a child of the age of twelve years; that the defendant, notwithstanding the age of plaintiff, wrongfully and unlawfully employed, permitted or suffered plaintiff to work in, about, *or in connection with,* said defendant's said lumber mill, by reason whereof, at said time and place, and while the plaintiff was so employed by the defendant, and acting in the course of said employment, he was struck and injured by a log being handled by the defendant's log skidding apparatus, the details and manner of the occurrence of the injury being set forth.

The cause was tried upon the theory that if the defendant "employed," "permitted" or "suffered" the plaintiff to work in the manner described, and the plaintiff received the injury complained of while at work, that the defendant was guilty of negligence *per se* by its act of employing, permitting, or suffering the child to work in violation of the positive inhibition of the statute, and was consequently liable for the damages occasioned by the child's injury, regardless of the manner in which the injury came about. In other words, the position of the plaintiff is that the illegal employment, or permitting, or suffering to work, is, in such case, to be regarded as the proximate cause of whatever injury occurs in the course of the work that the child is permitted or suffered to do, and that it is only essential to prove the illegal employment, or suffering to work, and its casual connection with an injury in the course of it, to establish a ground for recovery.

The violation of such a statute as Section 5943 C. G. L., *supra,* has been universally held to give rise to a cause of

action, because statutes for the protection of the lives and limbs of children are held to create a liability for damages due to their infraction, whether provided for in so many words in the statute or not. Norris v. Stanfield, 81 Ill. App. 264; Koester v. Rochester Candy Works, 194 N. Y. 92, 87 N. E. 77; Leathers v. Blackwell, Durham Tobacco Co., 144 N. C. 330, 57 S. E. 11; Norman v. Virginia-Pocahontas Coal Co., 68 W. Va. 405, 69 S. E. 857; Berdos v. Tremont & Suffolk Mills, 209 Mass. 489, 95 N. E. 876; See also Labott's Master and Servant, (2nd Ed.) Vol. 5, page 5885, par. 1899.

And such statutes, being to effectuate a humane purpose and intended for the progress of humanity, should be liberally construed. Cole v. Sloss-Sheffield Steel & Iron Co., 186 Ala. 192; 65 Sou. Rep. 177; DeSoto Coal Co. v. Hill, 179 Ala. 186, 60 Sou. Rep. 583; Nolan v. Moore, 81 Fla. 594, 88 Sou. Rep. 601. "This is a statute which makes an epoch in the progress of humanity, and the Courts should not get in its way and whittle it down, as Courts have done in the past." Lee v. Sterling Mfg. Co., 47 Misc. (N. Y.) Rep. 182, 93 N. Y. Supp. 560.

The statute was enacted in pursuance of a wise, humane, public policy to prohibit the parents of children under fourteen years of age from hiring them out to work not only in, about but "in connection with" any mill, factory, work-shop, mechanical establishment, laundry or on the stage of any theatre and to make the observance of it effective by prohibiting the owners or operators of such places from employing children under age to work in, about, *or in connection with,* the named establishments.

In so enacting it, the Legislature not only took into account the likely hazardous nature of the work usually done in the prohibited places, but also exercised its power and duty to provide for the protection of the young children of the State from growing up in servility and ignor-

ance, rendering them unfit to discharge the duties of citizenship. Not the least of the statutory objects was to prevent children from being deprived of educational advantages while hired out through the cupidity of parents or guardians in connection with those particular works where child-labor was known to be most generally employed, or frequently sought, owning to its well known cheapness and adaptability to be used as an auxiliary to adult labor. Leathers v. Blackwell, Durham Tobacco Co. (N. C.), *supra*.

We hold therefore that a declaration alleging a violation of the quoted statute, coupled with an allegation of injury as a result thereof, is sufficient to state a cause of action under the rules of pleading prevailing in this State, and that the declaration in the instant case was sufficient under this rule to withstand the defendant's demurrer and motions for compulsory amendment, which the lower court over-ruled. Triay v. Seals, 92 Fla. 310, 109 Sou. Rep. 427; Pillett v. Ershick, 99 Fla. 483, 126 Sou. Rep. 784; Dowling v. Nicholson, 101 Fla. 672, 135 Sou. Rep. 288.

The evidence shows that the defendant owned and operated a sawmill and lumber manufacturing plant at Olustee. The defendant also owned and operated a certain skidder equipment that was used in hauling up saw logs from the place where they were cut down in the woods to a location suitable for loading on railroad cars, so that they could be hauled to the mill at Olustee to be manufactured into lumber. Plaintiff first went to work for the defendant on April 26, 1929, and worked off and on for the defendant until he was injured on June 29, 1929.

That the work done by the skidding crews in cutting down and procuring logs through employment of these skidding operations was work required to be done, and actually done, in connection with the operation of defendant's lumber mill at Olustee is manifest. It was likewise established by a great preponderance of the evidence that plaintiff, a mere lad, twelve years old at the time, was

employed as a member of the skidder crew at the time he was hurt and his leg severely crushed while performing a part of such operations.

In the case now before the Court, the work on which plaintiff is shown to have been employed, and permitted or suffered to engage in, was the procurement of a supply of raw material for the operation of defendant's saw mill. That work of that kind is to be construed as work "in connection with" any mill, is fully sustained by the authorities, although such work was not actually done in the mill itself or within the curtilage thereof. The best that can be said of the proposition is that it was a question for the jury to determine under all the facts and circumstances shown in evidence, and the record shows that the Court in this case did submit the question to the jury under appropriate instructions.

In Gurney v. Atlantic, etc. Ry. Co., 58 N. Y. 358, The Court in construing the meaning of the phrase "in connection with" said:

"The words 'in connection with that company's railways,' as used in the relation they bear to the whole clause, are the equivalent of 'in the interest and upon the employment of that company in and about its railways and the operation and management thereof, and all matters connected with, relating to, and growing out of the proper and legitimate business of the company as the possessor and operator of such railways.'"

We are impressed with the fact that the definition of the phrase just given, is applicable to that same phrase as used in Section 5943 C. G. L., *supra,* and that it was at least a question for the jury to decide whether or not plaintiff was being employed "in connection with" defendant's saw mill, when he was set to work in the woods as a member of defendant's skidder crew in "snaking" logs to be used for the material supply of defendant's saw mill located some distance away, but as to which these skidder opera-

tions in question were an indispensable part of its ability to operate. See the construction placed on similar statutes in the following cases: McMahon v. McHale, 174 Mass. 320, 54 N. E. 854; Kerwin v. Long Island R. Co., 142 N. Y. Supp. 1125, 157 App. Div. 898; Yarmouth v. France, L. R. 19 Q. B. Div. 647, 57 L. J. Q. B. B. N. S. 7, 17 Eng. Rul. Cas. 217; Markle v. Donaldson, 8 Ont. L. Rep. 682; Sloss-Sheffield Steel & I. Co. v. Mobley, 139 Ala. 425, 36 Sou. Rep. 181; Huyck v. McNerney, 163 Ala. 244, 50 Sou. Rep. 926; Sweet v. General Electric Co., 149 N. Y. Supp. 609, 165 App. Div. 935; Hamm v. Rockwood Sprinkler Co., 8 N. J. L. 564; 97 Atl. 730.

The evidence was sufficient to warrant the jury in finding the defendant liable for some amount of damages under the circumstances shown by the record, and no material error of procedure or in the charges of the court, appears to warrant a reversal of the judgment on the merits.

We are convinced, however, that the judgment for $10,-000.00 for an injury of the character shown to have been inflicted, is excessive under the evidence adduced. According to the testimony, plaintiff suffered a crushed or broken leg.

Such an injury, but for the improper treatment it is alleged to have received, would according to the testimony, have completely healed within a few weeks without serious after effects or resultant permanent incapacity. Whether the alleged improper treatment is attributable solely to the lack of care of the injured member, by plaintiff and his parents, or whether it is due in part to the unskillful treatment of the first attending physician, is by no means clear.

At the trial the court was requested to charge the jury as to the allowance of damages for the permanent injuries resulting from the plaintiff's physician's alleged unskillful treatment which occasioned a permanent shortening and impairment of use of plaintiff's leg. Such charge was given

and no doubt the jury's verdict includes a substantial allowance based upon it.

The rule in such cases is as follows:

"Where one who has suffered personal injuries by reason of the negligence of another exercises reasonable care in securing the services of a competent physician or surgeon, *and in following his advice and instructions,* and his injuries are thereafter aggravated or increased by the negligence, mistake, or lack of skill of such physician or surgeon, the law regards the negligence of the wrong doer in causing the original injury as the proximate cause of the damages flowing from the subsequent negligent or unskillful treatment thereof, and holds him liable therefor." Texas & Pacific Ry. Co. vs. Hill, 237 U. S. 208, 59 L. Ed. 918.

But we know of no case which holds that special damages of this kind can be recovered without special allegations concerning same, laid in the declaration. And indeed, the fairest requirements of good pleading would suggest that a claim of this kind ought to be founded on something more than a general claim for damages which carries no notice to defendant that he is to be held answerable for the aggravation of an injury wholly brought about by the incompetent actions of a third party over whose conduct he has had no control.

No such special claim is laid in the declaration here considered. Therefore to the extent that special damages are included in the recovery, by way of award of compensation for permanent impairment of plaintiff's limb as a result of the unskillful treatment accorded it by plaintiff's physician, the verdict is unwarranted and excessive. Hildreth v. Western Union Tel. Co., 56 Fla. 387, 47 Sou. Rep. 820; Warfield v. Hepburn, 62 Fla. 409, 57 Sou. Rep. 618.

The judgment is therefore reversed and a new trial awarded, unless within thirty days after filing of the mandate in the court below, the plaintiff shall enter a

remittitur of $6,000.00 of the recovery, in which event the judgment as to the remainder of $4,000.00 will stand affirmed, otherwise the judgment to stand reversed for a new trial and for further proceedings according to law.

Affirmed on condition of remittitur.

WHITFIELD, TERRELL AND BROWN, J.J., concur.

BUFORD, C.J. AND ELLIS, J., dissent.

BUFORD, C. J., (Dissenting).—The declaration in this case based the right of recovery upon the alleged violation by the defendant of Section 4020 R. G. S., 5946 C. G. L., in that the defendant "unlawfully employed, permitted or suffered plaintiff to work in, about or in connection with defendant's said lumber mill." The statute prohibits the employment of a child under 14 years of age in, about or in connection with any (1) mill, (2) factory, (3) work shop, (4) mechanical establishment, (5) laundry, (6) or on the stage of any theatre.

It is too well settled to require any argument, or citation of authorities, that one must recover, if at all, upon the allegation of his declaration and it appears to me that the proof in this case shows conclusively that the plaintiff was not injured while performing any work in, about or in connection with any mill. The work the plaintiff was doing was entirely disconnected with the mill. It was work required to be done in connection with the business of the operators of the mill but the work being performed by this plaintiff at the time of the injury was no more work in connection with the mill than would have been the feeding of the mule which mule was required to be fed that it might be able to drag the skidder cable from the skidder to the place where the trees were felled and cut into logs. The skidder, the operation of which injured the plaintiff, was a mechanical establishment entirely disconnected with the mill.

As I see it, under the conclusions reached in the majority

opinion, it would be unlawful for the operators of a saw mill having an office in a distant city, where the business end of the saw mill operations are transacted, to employ a boy under 14 years of age as an office boy, or to employ a child under 14 years of age in any other capacity where the employment was connected with the business of operating a saw mill, although the employment might be ever so far removed from the hazards incident to the physical operation of the mill. In short, as I see it, there is a vast difference between employment in connection with a mill and employment in connection with the conduct of the *business* and *activities* incident to operating a mill.

In this case the operation of the skidder might have been conducted by persons in no way interested in the ownership or management of a saw mill and such persons, in case of an accident like the one before us, might have been liable to a plaintiff such as the one here for an injury received in connection with the operation of the skidder which is a mechanical device or establishment and yet, not have been liable at all to the plaintiff as the operator of the mill.

I think there is a fatal variance between the allegations and proof and for that reason I can not concur in the majority opinion.

ELLIS, J., concurs.