[Cite as *Ineos USA L.L.C. v. Furmanite America, Inc.*, 2014-Ohio-4996.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

INEOS USA LLC,

    PLAINTIFF-APPELLANT,            CASE NO. 1-14-06

    v.

FURMANITE AMERICA, INC., ET AL.,      O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Allen County Common Pleas Court
Trial Court No. CV20090371

**Judgment Reversed and Cause Remanded**

**Date of Decision: November 10, 2014**

APPEARANCES:

    *Vincent Atriano* for Appellant

    *Jeffrey T. Cox* for Appellee, Furmanite America, Inc.

**ROGERS, J.**

{¶1} Plaintiff-Appellant, Ineos USA LLC ("Ineos"), appeals the judgment of the Court of Common Pleas of Allen County granting summary judgment in favor of Defendant-Appellee, Furmanite America, Inc. ("Furmanite"), and dismissing two claims of fraud alleged in the complaint. On appeal, Ineos contends that the trial court erred by (1) finding that the economic loss rule barred the fraud claims; (2) failing to construe the evidence most strongly in Ineos's favor; and (3) failing to strike Furmanite's reply memorandum or, in the alternative, denying Ineos's request to file a surreply. For the reasons that follow, we reverse the trial court's judgment.

{¶2} As this matter implicates multiple years' worth of discovery, we will only discuss matters which are relevant to this appeal. In 1993, Ineos's predecessors in interest contracted with Furmanite to provide technical services for a chemical facility located in Lima, Ohio. In 1998, those services were expanded to include leak detection and repair ("LDAR") to ensure compliance with the U.S. Environmental Protection Agency ("EPA") LDAR regulations. Todd Grant, an employee of Furmanite, was the technician in charge of conducting the monitoring from 1998 until June 14, 2005, when he was fired. In April of 2005, the chemical plant was the subject of an audit conducted by the EPA regarding the LDAR monitoring program at the plant. An investigation followed, resulting in the EPA

issuing Ineos a "Finding of Violation ("FOV")" for failing to adequately monitor the plant.

{¶3} On April 17, 2009, Ineos filed a complaint ("original complaint") in the Court of Common Pleas of Allen County against Furmanite and Grant seeking recovery for damages that stemmed from incorrect LDAR monitoring. The complaint included five claims: (1) fraudulent misrepresentation; (2) fraudulent concealment; (3) breach of contract; (4) contractual indemnification; and (5) unjust enrichment. Specifically, Ineos alleged that not only did Furmanite fail to correctly monitor its chemical facility, but it also misrepresented the equipment and procedures used to conduct the monitoring, as well as the results of the monitoring. The results, which were either based upon the incorrect monitoring or completely fabricated, were then entered into a database that Ineos used to generate reports for the EPA. The complaint also alleged that Furmanite knew, but never disclosed, that the monitoring was either being performed incorrectly, or not at all. While the EPA sought civil penalties against Ineos for the FOV, at the time the complaint was filed, negotiations were as yet unresolved.

{¶4} On May 11, 2009, Furmanite filed its answer, wherein it denied the allegations set forth in Ineos's original complaint and asserted that the "fraud claims fail because those claims are premised on breach of contract claims." (Docket No. 5, p. 9). The court stayed the proceedings while the EPA

enforcement action was still pending. On June 12, 2013, Furmanite filed a motion for summary judgment on Ineos's contractual indemnification and unjust enrichment claims. Furmanite argued that the Ohio Revised Code rendered "the indemnification clauses in the parties' Contract * * * void and unenforceable." (Docket No. 33., p. 8). In response, on June 28, 2013, Ineos filed for a continuance of the summary judgment briefing under Civ.R. 56(F), arguing that Furmanite's summary judgment motion was premature and that inadequate discovery had taken place. The trial court granted the continuance on July 10, 2013, extending the time for filing a response brief to September 12, 2013.

{¶5} On September 12, 2013, Ineos filed its memorandum in opposition to Furmanite's motion for summary judgment, arguing in part that whether the indemnification clause was void was a question of fact, as it depended upon how the clause was applied, not how it was written. Furmanite filed a reply on September 20, 2013, arguing again that the indemnity provisions in the contract were void under Ohio law. In the trial court's September 25, 2013 judgment entry, it found that

> the indemnification clause could be read broadly to cover plaintiff's own negligence, however, *as applied* in the context of the instant case, there is at least a genuine issue as to whether plaintiff' [sic] complaint seeks enforcement of the indemnification clause to recover for plaintiff's negligence. So construed in favor of the plaintiff, the indemnification clause does not violate [Ohio law].

(Emphasis sic.) (Docket No. 46, p. 7-8). As a result, the trial court denied Furmanite's motion for summary judgment.

{¶6} Ineos filed a motion for leave to file a first amended complaint ("first amended complaint") on October 9, 2013, to add the claim of negligent hiring, retention and supervision; update facts and averments as a result of discovery; and clarify that the unjust enrichment claim includes a claim of quantum meruit, which Furmanite opposed. The trial court granted Ineos's motion and Furmanite filed an amended answer in response to Ineos's amended complaint.

{¶7} On October 10, 2013, competing motions for partial summary judgment were filed. Ineos filed a motion for partial summary judgment on its breach of contract and indemnification claims. Ineos contended that the contract required the use of certain equipment, and that Grant admitted that he never used the equipment in question. In Furmanite's memorandum in opposition, it raised the question as to what duties actually arose from the contract. Specifically, it argued that even if Grant failed to use certain equipment, the failure to use that equipment did not result in a breach of contract.

{¶8} Furmanite's second motion for partial summary judgment sought dismissal of the two fraud claims and a narrowing of the temporal scope of all of the claims. Furmanite argued that the fraud claims were barred by the economic loss rule. Specifically, Furmanite argued that the gravamen of Ineos's complaint

was for breach of contract and the economic loss rule prevents a plaintiff from alleging a contractual breach as a tort claim. Furmanite also argued that Ineos's fraud claim did not allege damages that were separate and distinct from the breach of contract. In essence, any loss compensable in fraud would be covered under the indemnification provision of the contract. However, while acknowledging that the trial court had ruled that there remained an issue of material fact as to whether the indemnity provisions were valid, Furmanite continued to assert "that the indemnity provisions included in the Contract are barred under Ohio law." (Docket No. 49, p 17, fn. 6).

{¶9} Ineos filed a memorandum in opposition to Furmanite's motion for partial summary judgment on November 12, 2013, arguing that the economic loss rule did not apply to intentional torts, that Furmanite breached duties independent of the contract, and that tort claims may be asserted, even where they are based on the same operative facts as a breach of contract. On December 2, 2013, Furmanite filed a reply brief in response, where it argued that Ineos had presented new arguments in violation of Civ.R. 9(B), and, in the alternative, that summary judgment was still proper as Ineos failed to set forth specific facts to prove the fraud claims. Specifically, Furmanite argued that Ineos had no evidence of either an independent duty to disclose Grant's alleged misconduct or of justifiable reliance of an alleged misrepresentation, which are both required as elements of

fraud. Furmanite also argued that the economic loss rule does apply, as Ineos did not allege a breach of duty independent of the contract or of any unique fraud based injury. Further, Furmanite argued that Ineos had no damages prior to November 10, 2004.

{¶10} On December 9, 2013, Ineos filed a motion to strike arguments presented by Furmanite in its reply brief. Ineos argued that at least three new arguments were presented by Furmanite: (1) failure to plead fraud with particularity under Civ.R. 9(B); (2) lack of justifiable reliance; and (3) lack of damages prior to November 10, 2004. Ineos requested that these new arguments be stricken, or, in the alternative, that it be allowed to file a surreply, addressing these new arguments.

{¶11} The memorandum in support of the motion also contained a lengthy footnote that provided an abbreviated response to these new allegations; while "reserve[ing] the right to fully respond to them if [the] motion to strike is denied and INEOS is granted leave to file a surreply * * *." (Docket No. 80, Memorandum in Support, p. 5, fn. 2). Furmanite filed a memorandum in opposition to Ineos's motion to strike on December 20, 2013, arguing that it had merely responded to Ineos's memorandum; that Ineos suffered no prejudice as it had opened the door to new arguments; and that the lengthy footnote constituted a surreply filed without leave of the court.

{¶12} On January 14, 2014, Ineos filed a motion to file a second amended complaint ("second amended complaint") with the consent of all parties under Civ.R. 15(A). The second amended complaint again updated and clarified the fraud claims, and added a separately pleaded claim of fraudulent inducement. Ineos also stated that the second amended complaint was in response to the Civ.R. 9(B) claim in Furmanite's summary judgment reply and that "these amendments moot all such arguments." (Docket No. 84, p. 2). On January 28, 2014, Furmanite filed a memorandum in response to the second amended complaint, arguing that the updates to the fraud claims and the addition of a fraudulent inducement claim did not affect any of its summary judgment arguments. On January 28, 2014, Furmanite also filed an answer to Ineos's second amended complaint. On February 19, the trial court granted Ineos's motion to file a second amended complaint, relating back to the date of the request.

{¶13} On March 4, 2014, the trial court issued its judgment on both motions for partial summary judgment. It granted Furmanite's motion as to the two fraud claims. In its judgment entry, the trial court stated that it considered the original motion, the response, the reply, the motion to strike, and the motion in opposition to the motion to strike. The trial court overruled the motion to strike, and found that

> [t]he gist of plaintiff's complaint was that it had been deprived of the benefit of its bargain. The fraud claims were a recapitulation of the

> breach-of-contract claim, seeking recovery of the same economic loss contemplated by the contract. The fraudulent misrepresentation and concealment claims cannot be separated from the breach of contract claim. Thus, plaintiff was merely alleging causes of action for the fraudulent breach of a contract, which is not recognized under such circumstances as a tort in Ohio.[1]

(Docket No. 98, p. 9-10). The trial court went on to state that "Furmanite's motion for partial summary judgment on plaintiff's fraud claims (Counts I, and II in the 2nd amended Complaint) is GRANTED because those claims are barred by the economic loss rule." (*Id.* at p. 20). The trial court denied the motion as it pertained to limiting the temporal scope of the actions.

{¶14} The judgment entry also denied Ineos's motion for partial summary judgment on the breach of contract and indemnification claims. The trial court found that there was a genuine issue of material fact as to what duties were actually required under the contract. The court maintained its earlier ruling that there was a genuine issue of material fact as to whether the indemnification provisions in the contract were void.

{¶15} It is from this judgment that Ineos timely filed this appeal, presenting the following assignments of error for our review.

---

[1] We note that the trial court also found that Ineos was aware of Grant's monitoring problems and thus "there is no genuine issue of material fact that Furmanite fraudulently induced plaintiff to extend the contract." (Docket No. 98, p. 9). After our review of the record, there is evidence that disputes this finding. However, we need not address it in detail, as it was not a basis for the trial court granting summary judgment.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED BY RULING THAT THE ECONOMIC LOSS RULE BARS INEOS'S CLAIMS.**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED BY WEIGHING CONFLICTING EVIDENCE AND BY FAILING TO CONSTRUE THE EVIDENCE MOST STRONGLY IN INEOS'S FAVOR AS REQUIRED BY CIV.R. 56(C).**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED BY DENYING INEOS'S MOTION TO STRIKE FURMANITE'S NEW SUMMARY JUDGMENT ARGUMENTS FIRST PRESENTED IN ITS REPLY MEMORANDUM AND INEOS'S ALTERNATIVE MOTION FOR LEAVE TO SURREPLY.**

*Assignment of Error No. I*

{¶16} In its first assignment of error, Ineos argues that the economic loss rule does not bar a party from asserting fraud claims that are separate and distinct from contract claims. We agree.

*I. Standard of Review*

{¶17} An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist.1999). Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton*

*Heidelberg Distrib. Co*., 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn*., 69 Ohio St.3d 217, 222 (1994). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor." *Id*. If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 (1992).

**{¶18}** The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument. *Id*. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; the nonmoving party may not rest on the mere allegations or denials of the pleadings. *Id*. at 293; Civ.R. 56(E).

## II. The Economic Loss Rule

{¶19} The economic loss rule operates as a limitation on recovery. *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, ¶ 6. In essence, a party cannot recover in tort for purely economic loss for the breach of a duty that arose solely by contract. *Floor Craft Floor Covering v. Parma Community Gen. Hosp. Assn.*, 54 Ohio St.3d 1, 6-8 (1990). The rule typically applies to bar recovery where a contract exists between two parties and a third party, not in privity, alleges that the negligence of one of the parties in its performance of the contract caused the third party damage. *See Corporex* at ¶ 11 (barring recovery of building project owner alleging the breach of a duty of a contract it was not a part of); *Floor Craft* at 8 (barring negligence action for economic loss brought by flooring contractors not in contract privity with architects); *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 45 (1989) (finding economic loss doctrine bars negligence action against manufacturer where no harm came to persons or property, as duty to provide working goods arose solely through contract).[2] "In the absence of privity of contract between two disputing parties the general rule is 'there is no * * * duty to

---

[2] We note that there is a limited exception where the contract between two parties created a fiduciary relationship. *See Haddon View Inv. Co. v. Coopers & Lybrand*, 70 Ohio St.2d 154, 157 (1982). A third party can recover for professional negligence where a contract between two other parties created a fiduciary duty between those parties, this fiduciary duty was breached when one of the parties either knowingly or negligently supplied false information to the other, and the third party is a member of limited class of persons whose reliance on that information was foreseeable by the breaching party. *Id.* The Ohio Supreme Court has clarified its position in *Haddon View*, stating that the recovery was premised upon a preexisting duty in tort, not upon breach of a duty that arose by the contract. *Corporex* at ¶ 9.

exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things.' " *Floor Craft* at 3, quoting Keeton, Dobbs, Keeton & Owen, *Prosser and Keeton on the Law of Torts,* Section 92, 657 (5th Ed.1984).

**{¶20}** Here, there is no question that the parties are in contract privity. As a result, the economic loss rule does not generally apply. However, as the Ohio Supreme Court has noted

> privity or a sufficient nexus that could serve as a substitute for privity may impose only those contractual duties and liability for breach of those duties agreed to by the parties to the contract, and no more. When a duty in tort exists, a party may recover in tort. When a duty is premised entirely upon the terms of a contract, a party may recover based upon breach of contract.

*Corporex* at ¶ 10. "[W]here a plaintiff has suffered only economic harm as a result of a defendant's breach of duty, the economic loss rule will bar the tort claim if the duty only arose by contract." *Campbell v. Krupp*, 195 Ohio App.3d 573, 2011-Ohio-2694, ¶ 16 (6th Dist.). Thus, where a contract between parties exists, a tort claim must be analyzed to determine whether it is merely a recapitulation of the breach-of-contract claim or whether it alleges a breach of an independent duty. *See Gator Dev. Corp. v. VHH, Ltd.*, 1st Dist. Hamilton No. C-080193, 2009-Ohio-1802, ¶ 18.

**{¶21}** As this court has found: "[U]nder modern rules of pleading, an action for tort may be combined with and arise from the same operative facts as a breach-

of-contract action." *Burns v. Prudential Securities, Inc.*, 167 Ohio App.3d 809, 2006-Ohio-3550, ¶ 99 (3d Dist.), citing *Sweet v. Grange Mut. Cas. Co.*, 50 Ohio App.2d 401, 406-407 (5th Dist.1975). A tort claim can proceed where "the facts of the case show an intentional tort committed independently, but in connection with a breach of contract * * *." *Burns* at ¶ 99. Thus, where a tort claim alleges that a duty was breached independent of the contract, the economic loss rule does not apply. *See Campbell at ¶ 16; see also Eysoldt v. ProScan Imaging*, 194 Ohio App.3d 630, 2011-Ohio-2359, ¶ 21 (1st Dist.) (finding that the economic loss rule does not apply to intentional torts, as they are breaches of duties beyond those created by contract). Where the tort claim alleges a breach of an independent duty, it must also allege damages that are separate and distinct from the breach of contract. *Strategy Group for Media, Inc. v. Lowden*, 5th Dist. Delaware No. 12 CAE 03 0016, 2013-Ohio-1330, ¶ 30. Thus, whether the economic loss rule applies depends upon whether the fraud claim alleges that Furmanite breached a duty independent of the contract and whether it alleges damages separate and distinct from those alleged in the breach of contract.

*A. Duty Breached*

{¶22} When applying the economic loss rule to the case at hand, we recognize that Ineos's fraud claims allege breaches of duties similar to those alleged in the breach-of-contract. The breach of contract alleges a failure to

perform LDAR monitoring, while the fraud claims allege either an affirmative misrepresentation of how LDAR monitoring was performed or the failure to inform Ineos of problems with the LDAR monitoring when Furmanite had a duty to speak. To determine whether the economic loss rule applies requires our comparison between the duties that arise out of contract against those duties that Ineos alleges were breached in fraud.

{¶23} However, there is a dispute as to what duties actually arose from the contract. Ineos's general allegations contend that the LDAR monitoring program was governed by "a document titled 'FURMANITE AMERICA, INC. FUGITIVE EMMISSIONS INSPECTION PROGRAM (FEIP)' * * * also known as Furmanite's FEIP Base Operations Manual." (Docket No. 84, Second Amended Complaint, p. 5). Ineos alleges that the Base Operations Manual contained the procedures to follow when performing LDAR monitoring, and specifically required the use of a data logging device to collect data in the field. Both the fraudulent misrepresentation and fraudulent concealment claims argue, in part, that this data logger was represented as being used when it was not. On the other hand, Furmanite argued that "the use of a data logger is not required by LDAR regulations." (Docket No. 61, p. 8). Furmanite also argued that Ineos "never required Furmanite's technicians to use a data logger." (*Id.* at p. 9). In essence,

Furmanite argued that failing to use the data logger cannot be found to be a breach of contract.

**{¶24}** The trial court found that "there is a genuine issue of material fact as to whether Furmanite's Base Operations Manual is the same thing as the LDAR or FEIP Program referenced in the contract and purchase order and even if it was, *whether Grant's alleged failure to perform in accordance therewith was a breach.*" (Emphasis added.) (Docket No. 98, p. 13-14). Thus, there is a genuine issue of material fact as to what duties Furmanite was obligated to perform as a result of the contract.

**{¶25}** If failing to perform certain actions would never result in a breach of contract, then there is no duty in the contract to perform those actions. An allegation that Furmanite misrepresented that it was performing actions that were related to, but not required by, the contract cannot be the same as an allegation of a breach of contract. Insofar as any such representations were relied upon by Ineos to its detriment, they are actionable in fraud. *See Bryant v. Walt Sweeney Automotive, Inc.*, 1st Dist. Hamilton Nos. C-010395, C-010404, 2002-Ohio-2577, ¶ 28-29 (auto-dealer misrepresenting whether a contract could be cancelled did not result in breach of contract but supported claim for fraud).

**{¶26}** So long as there is a legitimate dispute as to what duties the contract created, we cannot adequately determine whether the tort alleges a breach of the

same duties. The similarity of Ineos's claims, under these circumstances, is irrelevant. By its own ruling, the trial court found that the there was a genuine issue of material fact as to what duties the contract placed upon Furmanite. So long as this question remains unanswered, it cannot be determined whether the duties breached from the alleged fraud arose from the contract.

### B. Separate Damages

**{¶27}** Even where a tort alleges a separate duty from that created by contract, it must also claim damages separate from those recoverable for a breach. *Strategy Group*, 2013-Ohio-1330, ¶ 30. "Generally, a party injured by a breach of contract is entitled to his expectation interest or 'his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed.'" *Rasnick v. Tubbs*, 126 Ohio App.3d 431, 437 (3d Dist.1998); quoting 1 Restatement of the Law 2d, Contracts, Remedies, Section 344, at 102-103 (1981). Further, "a party injured by a breach of contract is entitled to recover indirect costs incurred as a result of the breach." *S & D Mech. Contrs., Inc. v. Enting Water Conditioning Sys., Inc.*, 71 Ohio App.3d 228, 239 (2d Dist.1991). However, at least one court has found that there is no common law right for a contracting party to recover civil penalties or attorney fees for a violation of the Clean Air Act when no indemnity provision exists in the contract.

*See Beerman Realty Co. v. Alloyd Asbestos Abatement Co.*, 100 Ohio App.3d 270, 277-278 (2d Dist.1995).

{¶28} Compensatory damages that seek to make the aggrieved party whole are also available in tort. *Melenick v. McManamon*, 8th Dist. Cuyahoga Nos. 92453, 92675, 2010-Ohio-1051, ¶ 42. Moreover, "a party injured by fraud can receive damages 'naturally and proximately resulting from the fraud.' " *Id.*, quoting *Brewer v. Brothers*, 82 Ohio App.3d 148, 154 (12th Dist.1992). This includes paying for losses that arose through defending against a government action that was proximately caused by the fraud. *See Segal v. Horwitz Bros.*, 32 Ohio App. 1, 3-4 (1st Dist.1929) (finding that seller of stolen goods proximately caused costs associated with purchaser defending against subsequent arrest and prosecution).

{¶29} Here, it is undisputed that Ineos was required to pay civil penalties to the EPA as a result of a FOV regarding the LDAR monitoring. The contract includes a clause that provides indemnification for any civil penalties that may result from the monitoring services provided. These are the same losses that would be recoverable in an action for fraud. This provision would otherwise allow Ineos to utilize the contract to obtain all of the damages as a result of the FOV, making it impossible to claim separate damages for the fraud.

**{¶30}** However, Furmanite has argued that the indemnity provisions in the contract are unenforceable and void as a matter of law. Further, the trial court has determined that there are genuine issues of material fact as to whether the indemnity provision is void. If these provisions are void, then Ineos cannot seek indemnification for the losses associated with the EPA action under the general terms of the contract. However, the fraud claims would still allow for Ineos to recoup these losses if they are proximately caused by the fraud. Therefore, as there is a genuine issue of material fact as to whether the indemnity provisions are void, there remains a genuine issue of material fact as to whether the fraud claim pleads separate and distinct damages.[3]

**{¶31}** As we find that there is a genuine issue of material fact as to whether the fraud claims allege a breach of a separate duty and whether they allege damages separate and distinct from those argued in the breach of contract claims, we find that any application of the economic loss rule was premature, making summary judgment improper.

**{¶32}** Accordingly, appellant's first assignment of error is sustained.

---

[3] We are troubled by the way that Furmanite analyzes the contract in this action. When it is defending against the breach of contract claim, it argues that the contract required next to nothing in the way of how to adequately monitor the plant and that the indemnity provisions are void. When defending against the fraud claims, it encourages an expansive interpretation of the contract, such that the contract contains all of the same duties alleged in the fraud and that the indemnity provisions eliminate the possibility of separate damages such that the economic loss rule applies. After the trial court granted summary judgment on the fraud claims, Furmanite requested the court to reconsider its prior ruling on whether the indemnity provisions are void, but then also filed a motion to dismiss the unjust enrichment claim, the negligent hiring and retention claim, and the fraudulent inducement claim based upon the economic loss rule. The contract cannot expand and contract depending upon which claim is being reviewed that instant and the trial court should not indulge Furmanite's flip-flopping as to what duties are or are not a part of the contract.

*Assignments of Error Nos. II & III*

**{¶33}** In Ineos's second and third assignments of error, it argues that the trial court improperly construed the evidence in Furmanite's favor and failed to strike Furmanite's reply memorandum or, in the alternative, allow Ineos to file a surreply. Having found that summary judgment was granted in error, the remaining assignments of error are moot and we elect not to address them. App.R. 12(A)(1)(c).

**{¶34}** Having found error prejudicial to Ineos in its first assignment of error, we reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**WILLAMOWSKI, P.J., concurs.**

**SHAW, J., concurs in Judgment Only.**

**/jlr**